Hewett Grocery Company v. Commissioner. Clyde G. Hewett v. Commissioner.
Hewett Grocery Co. v. Commissioner
Docket Nos. 7889, 15158.
United States Tax Court
1949 Tax Ct. Memo LEXIS 253; 8 T.C.M. (CCH) 217; T.C.M. (RIA) 49051; February 28, 1949
*253 Upon the facts, held: 1. That during the taxable year 1941, the Hewett Grocery Company was a valid partnership for tax purposes, and the respondent erred in taxing all its net income to petitioner. 2. The respondent's determination that the net income of the Soo Realty Company for 1941 was taxable to petitioner is sustained for failure of proof.
3. The loss sustained by petitioner upon the sale of his undivided interest in two operating oil leases in 1941 was an ordinary loss and not a loss resulting from the sale of capital assets. Arthur L. Evely, Esq., Penobscot Bldg., Detroit, Mich., for the petitioners. Wesley A. Dierberger, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These proceedings were consolidated. Docket No. 7889, in which Hewett Grocery Company is petitioner, involves deficiencies in income tax of $12,203.08, declared value excess-profits tax of $6,511.48 and excess-profits tax in the amount of $2,301.18 for the taxable year 1941. Docket No. 15158, in which Clyde G. Hewett is petitioner, involves a deficiency in income tax in the amount of $26,427.07 for the taxable year 1941. The issues presented are: 1. Whether the income from the businesses operated under the names of Hewett Grocery Company and Soo Realty Company, respectively, during the taxable year 1941, is taxable to petitioner Clyde G. Hewett under section 22 (a) of the Internal Revenue Code. 2. In the alternative, whether the Hewett Grocery Company, in the taxable year 1941, was an association taxable as a corporation under section 3797 (a) (3) of the Internal Revenue Code. 3. Whether the income of the Soo Realty *255 Company, in 1941, should be added to the income of Hewett Grocery Company in determining the latter's income tax liability, under section 3797 (a) (3) of the Internal Revenue Code. 4. Whether losses sustained in 1941 by petitioner Clyde G. Hewett, by reason of his investment in certain oil properties, were ordinary or long-term capital losses. The case was submitted upon a partial stipulation of facts, oral testimony and exhibits. The facts as stipulated are so found. Facts found which have not been stipulated are found from the evidence. Findings of Fact Petitioner Clyde G. Hewett is an individual residing at Sault Ste. Marie, Michigan. His income tax return for the taxable year 1941 was filed with the collector of internal revenue for the district of Michigan at Detroit, Michigan. Petitioner Hewett Grocery Company, and also the Soo Realty Company have their business addresses at Sault Ste. Marie, Michigan. In the taxable year 1941, each of these companies filed partnership returns with the collector of internal revenue for the district of Michigan at Detroit, Michigan. Petitioner Clyde G. Hewett, in the year 1912, engaged in the wholesale flour, *256 feed, grain, hay and produce business in Escanaba, Michigan. The original capital investment in said business was $16,500. Hewett had $7,000, borrowed $7,000 from two banks, and his wife, Isabel Hewett, advanced him $2,500 of her own money as an investment in the business. The business was continued until April 1, 1920. During this period the business was gradually changed to a wholesale grocery business and branches were established in Sault Ste. Marie, Ishpeming, Iron River and Manistique, all cities in the Upper Peninsula of Michigan. On April 1, 1920, each of the five branches of this wholesale grocery business was incorporated under the respective names of Hewett Grocery Company of Sault Ste. Marie, Hewett Grocery Company of Ishpeming, Hewett Grocery Company of Escanaba, Hewett Grocery Company of Iron River and Hewett Grocery Company of Manistique. One third of the stock of the Sault Ste. Marie, Iron River and Manistique Companies was issued to Isabel F. Hewett. The remaining stock, except for minor holdings issued to hired managers, was issued to petitioner Hewett. The Ishpeming Company issued 100 shares to Isabel F. Hewett and 219 shares to petitioner Hewett out of a total *257 of 400 shares. The Escanaba Company issued 124 shares to Isabel F. Hewett and 375 shares to petitioner Hewett out of a total issue of 500 shares. Petitioner Hewett was president and his wife, Isabel, was vice-president of all the five corporations. The manager of the respective corporations was usually the secretary-treasurer. On July 3, 1928, 30 shares of the stock of the Hewett Grocery Company of Sault Ste. Marie were issued to Catherine Newton, a daughter, in exchange for a demand note in the amount of $3,000. In 1928, Catherine was employed by said company, at a salary of about $300 per month, of which she withdrew $100 and left the balance to accrue in payment of the aforesaid note, which was paid in full. On July 5, 1928, Grant Hewett, a son, purchased 80 shares of the stock of the Hewett Grocery Company of Ishpeming for $8,000 and gave his note to petitioner for the purchase price. At that time Grant was employed at the Hewett Grocery Company of Sault Ste. Marie and was receiving $300 per month. He withdrew $100 or $125 a month and left the balance to accrue on the payment of said note, which was paid in full. On July 5, 1931, the stock of the Hewett Grocery Company of *258 Iron River, with the exception of 10 shares, was reissued in the names of petitioner Hewett, his wife, Isabel, and their four children, Dorothy, Grant, Catherine and Margaret, in equal amounts of 48 1/3 shares each. The equalization of the shares of such company was accomplished through gifts of the shares of petitioner Hewett and his wife, Isabel. All of the certificates of this stock were kept in a vault of the Hewett Grocery Company at Sault Ste. Marie, to which all had access. In 1933, petitioner Hewett was informed that the corporate charter of the Hewett Grocery Company of Sault Ste. Marie had been forfeited. In the Summer of 1933, Hewett, his wife and four children discussed the formation of a partnership to operate the business of that company. It was decided that a partnership would be formed on January 1, 1934. On that date the partnership took over the business and assets of the Hewett Grocery Company of Sault Ste. Marie. On or about August 16, 1935, a certificate of doing business as a copartnership was executed by Hewett, his wife and four children and filed with the clerk of Chippewa County, Michigan. No written partnership agreement was executed at that time. On *259 December 31, 1934, the business and property of the Hewett Grocery Company of Ishpeming were turned over to Hewett, his wife, Isabel, and their four children. On April 25, 1936, they each executed and filed in the proper office a certificate of doing a wholesale grocery business at Ishpeming, Michigan, as copartners under the firm name of Hewett Grocery Company of Ishpeming. On March 27, 1935, all of the stock of the Hewett Grocery Company of Manistique was reissued to petitioner Hewett, his wife, Isabel, and their four children in equal amounts of 50 shares each. On January 1, 1936, the business and assets of the Hewett Grocery Company of Escanaba were turned over to a partnership consisting of petitioner Hewett, his wife, Isabel, and their four children. On April 25, 1936, each of these parties executed a certificate of copartnership certifying they were copartners doing a wholesale grocery business under the firm name of Hewett Grocery Company of Escanaba, at Escanaba, Michigan. Petitioner Hewett filed a gift tax return for the year 1935 reporting gifts of an interest in the Hewett Grocery Company of Escanaba. This return, among other things, contains the following: Value at
Item
Description of Gift, Motive and
Date of
Date of
No.
Donee's Name and Address
Gift
Gift
Interest in Hewett Grocery Company of Escanaba, to each of donor's
four children, as follows: 1
To Catherine A. Newton, Sault Ste. Marie, Mich.
12/31/35
$10.562.50
2
To Margaret D. Hewtt [Hewett] Sault Ste. Marie, Mich.
12/31/35
10,562.50
3
To Dorothy M. Hewett, Sault Ste. Marie, Mich.
12/31/35
10,562.50
4
To Grant F. Hewett, Sault Ste. Marie, Mich.
12/31/35
10,562.50
Note: Donor was the owner of 375 out of 500 shares of stock of the
company. Each gift consisted of a transfer (without record
transfer of stock) of right to receive assets of company on
liquidation, effected through distribution of assets on January
1, 1936, to a partnership in which donor, his wife, and the
four donees each had a 1/6th interest. Donor retained a 1/6th
interest (equivalent to retention of 83 1/3 shares) and there-
fore transferred the equivalent of 281 2/3 shares to the four
donees, or 70-5/12 shares to each. Shares are valued at $150.00
in computing the amount of the gift.
Motive of gift: love and affection.
Total
$42,250.00
*260 No gift tax was paid on these gifts due to the specific exemption claimed. No other gifts were reported in the year 1935, and in Schedule "C" of the gift tax return under the heading: "Returns, Amounts of Specific Exemption, and Net Gifts for Preceding Years (Subsequent to June 6, 1932)" the petitioner reported "None." On April 1, 1937, petitioner Hewett, his wife and four children entered into an agreement as of January 1, 1937, purporting to dissolve the previous partnership between them. The reason stated in such agreement was that the parties had been advised by counsel that there was a serious question whether petitioner Hewett's wife could legally be a member of a partnership in which he was also a member. In this agreement, petitioner Hewett and his four children purported to form a new partnership to carry on the business previously conducted by the three partnerships in Escanaba, Ishpeming and Sault Ste. Marie as equal partners. Such agreement, inter alia, provides as follows: "5. The partnership shall be under the management and supervision of Clyde G. Hewett during his lifetime and he shall have full authority to conduct said business as his best judgment may direct, *261 including the authority (a) to engage such employees as he may deem necessary for the proper conduct of the business; (b) to negotiate and execute contracts for the purchase and sale of merchandise; (c) to pay, assign, transfer, pledge, compromise, or release any claims or debts; (d) to borrow or loan money or to make, execute, deliver, accept, or endorse any commercial paper; and (e) to do any and all other things or acts which shall be reasonably required for the proper conduct of such businesses. "6. That, during the lifetime of Clyde G. Hewett, none of the other parties hereto shall have any of the aforementioned powers, except pursuant to the written authority of the said Clyde G. Hewett. "7. It is further agreed by the parties hereto that in the event of the death or withdrawal of any one or more of the partners, the partnership should not thereby be dissolved, but shall be continued by the remaining partners. Upon the death or withdrawal of any one of the partners, such deceased partner's interest shall be sold to the surviving partners and such sale shall inure to the benefit of all of the surviving partners in equal proportion. "8. In the event that any one of the partners *262 shall at any time desire to withdraw from the partnership, or in the event of the death of any one of the parties hereto, it is hereby agreed that the interest of such partner shall be sold to the remaining partners for a sum of money equal to the value of such partner's interest in this partnership; that said sum shall be paid to such withdrawing partner or to the executor, administrator, or personal representative of such deceased partner out of partnership funds, and that upon such payment such partner, or the executor, administrator, or personal representative of such deceased partner, shall assign, transfer, quit claim, and set over unto the remaining partners any and all interest of the said withdrawing partner or deceased partner in and to the partnership assets." Also, on April 1, 1937, effective as of January 1, 1937, petitioner Hewett and his four children, as parties of the first part, entered into an agreement with Isabel F. Hewett, as party of the second part. This agreement provides, in part, as follows: "1. Party of the second part hereby sells to parties of the first part all of the property and assets representing her one-sixth interest in the wholesale grocery *263 businesses conducted by the former partnership consisting of Clyde G. Hewett, Isabel F. Hewett, Grant F. Hewett, Margaret D. Hewett, Catherine A. Newton, and Dorothy M. Hewett, as shown by the books of account of said businesses as of December 31, 1936. "2. The said Clyde G. Hewett, Grant F. Hewett, Margaret D. Hewett, Catherine A. Newton and Dorothy M. Hewett, parties of the first part, agree to pay to the said Isabel F. Hewett, party of the second part, as the purchase price of said property and assets an amount equal to one-sixth of their annual net profits, said payments to continue during her lifetime. "3. In the event that the said partnership composed of parties of the first part shall for any reason whatsoever dissolve and discontinue business prior to the death of the said Isabel F. Hewett, party of the second part, then and in that event there shall be paid to the said Isabel F. Hewett an amount of money equal to the value of the property and assets sold to the parties of the first part hereunder, plus any part of the net profits due to the party of the second part under this contract but not already paid to her, or in lieu of such payment there shall be turned over to *264 the said party of the second part property having a cash value of such amount; and the said party of the second part shall be permitted to retain as her individual property any payments theretofore made to her under the terms of this contract as consideration for the use of the aforesaid property and assets by parties of the first part. "IT IS UNDERSTOOD AND AGREED by and between all the parties hereto that the said Isabel F. Hewett, party of the second part, shall in no sense be considered a partner with parties of the first part, and shall not be liable for any of the partnership or individual debts or obligations of parties of the first part. "IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this 1st day of April, 1937." On January 1, 1938, the assets of the Hewett Grocery Company of Iron River and the Hewett Grocery Company of Manistique were transferred to the partnership consisting of petitioner Hewett and his four children, established under the agreement of April 1, 1937, as of January 1, 1937. On January 2, 1938, these partners entered into an agreement with Isabel F. Hewett to purchase her one-sixth interest in the Hewett Grocery Company *265 of Iron River and the Hewett Grocery Company of Manistique and to pay her therefor an amount equal to one sixth of the annual net profits earned in the use of these assets in their business during her lifetime. This agreement contained, inter alia, the following provision: "IT IS UNDERSTOOD AND AGREED by and between all the parties hereto that the said Isabel F. Hewett, party of the second part, shall in no sense be considered a partner with parties of the first part, and shall not be liable for any of the partnership or individual debts or obligations of parties of the first part." On January 12, 1942, petitioner Hewett, his wife, Isabel, and their four children entered into an agreement, wherein the parties terminated the aforesaid agreements of April 1, 1937 and January 2, 1938, and the parties agreed to form a new partnership in which each was to have a one-sixth interest, for the purpose of carrying on the wholesale grocery business under the name of Hewett Grocery Company of Sault Ste. Marie, Ishpeming, Escanaba, Manistique and Iron River, Michigan. The reason for this new agreement was legislation in Michigan permitting a wife to become a partner with her husband. This *266 partnership agreement contained provisions as to management, the waiver of certain powers, etc., identical with those contained in paragraphs "5," "6" and "7" of the agreement of April 1, 1937, which are heretofore set forth in full. On January 12, 1942, Hewett, his wife and four children entered into a written partnership agreement to carry on a realty business at Sault Ste. Marie, Michigan, under the name of the Soo Realty Company. On the same date they executed and filed in the proper office a certificate for conducting business under the assumed name of the Soo Realty Company. The partnership agreement states that it was made and entered into the 12th day of January 1942, as of April 15, 1941. The preamble reads as follows; "WHEREAS, on this date the abovenamed parties have formed a partnership as of April 15, 1941, for the conduct of a realty business in the Upper Peninsula of the State of Michigan;" This partnership agreement contained similar provisions conferring certain powers upon Hewett and forbidding their exercise by the other partners without his written consent, as in the Hewett Grocery partnership agreement. The Soo Realty Company acquired two buildings in Sault *267 Ste. Marie. One of these was remodeled and rented to the A & P Tea Company and the other was rented to the Hewett Grocery Company. Substantially all the capital for the purchase of these buildings was borrowed from banks, although some money was borrowed from petitioner Hewett, his wife, Isabel, and their daughter Catherine. The books of the Soo Realty Company were kept by Margaret Hewett, who signed checks and took charge of the few transactions in which it engaged. In the taxable year 1941, the Soo Realty Company engaged in no other business except the ownership and renting of the two aforementioned buildings. The net income of the Soo Realty Company for the taxable year was $2,057.58. During the taxable year 1941, the Hewett Grocery Company, a copartnership, operated a general wholesale grocery business at the five locations, to wit: Sault Ste. Marie, Ishpeming, Escanaba, Manistique and Iron River, Michigan. Each branch had a separate manager who supervised the business at that particular location. Each manager had authority to issue checks, borrow money from the banks, hire and discharge his own employees, make purchases, issue credit, make collections and, in general, to conduct *268 the day-to-day affairs of his particular branch. Each manager was compensated on a basis of a fixed salary plus a share of the net profits of his branch. During the taxable year 1941, Dorothy Hewett lived in Denver, Colorado, where she had moved about 1936 for reasons of her health. Prior to that time she had worked at the Hewett Grocery Company at Sault Ste. Marie. At least once a year she spent two or three weeks around Christmas at Sault Ste. Marie and participated with the other partners in meetings when partnership affairs were discussed. Catherine Newton worked for the Hewett Grocery Company at Sault Ste. Marie from 1928 until about 1937. She married in 1932 and after 1937 did not work regularly. In the taxable year she was not employed by the Hewett Grocery Company, but took part in the meetings of the partners when matters pertaining to the operation and administration of the two partnerships were discussed. In the taxable year 1941, Grant Hewett was assistant manager of the Hewett Grocery Company of Manistique. He has been continuously employed on a full-time basis in the Hewett grovery business since 1928. He participated in the meetings when matters pertaining to the operation *269 and administration of the two partnerships were discussed. During the taxable year 1941, Margaret Hewett was employed as a bookkeeper for the Hewett Grocery Company at Sault Ste. Marie. She began to work full time in 1934, but prior to that time worked in the office during school vacations. On occasions, she served as manager of that branch. She likewise participated in the meetings of the partners when matters pertaining to the operation and administration of the two partnerships were discussed. Isabel F. Hewett was a member of the Hewett Grocery Company partnership from its inception until 1937. She was also a member of the Soo Realty Company. After 1937, she participated in the profits of the Hewett Grocery Company on the same basis as the other members. She likewise participated in meetings of the partners when matters pertaining to the operation and administration of the partnership were discussed. The partnership return of the Hewett Grocery Company for the taxable year 1941 reported the income to be equally divided among the five partners and Isabel Hewett. Petitioner Hewett, during the taxable year 1941, was not active in the Hewett Grocery business, although he participated *270 in the meetings of the partners. After 1937, he devoted the major portion of his time to other business interests, including the management of a brewery. For the year 1934 and all subsequent years, the Hewett Grocery Company filed a partnership return. The books of that company carry investment accounts in the names of petitioner Hewett, his wife, Isabel, and their four children. In 1937, petitioner Hewett acquired a one-sixteenth working interest in an oil lease known as the "Lincoln Life Lease," for which he paid the sum of $9,000. Bell and Marks, Incorporated, was running the operation. In 1941, the wells were not producing sufficient oil to cover the operating cost and the interested parties decided to sell all the equipment on the operation. Petitioner Hewett, in 1941, received $1,248 as his share of the equipment which was sold. Also, in 1937, petitioner Hewett acquired a one-eighth working interest in an oil lease known as the "Schember Lease," located near Gladwin, Michigan, for which he paid the sum of $48,500. Bell and Marks, Incorporated, was likewise running this operation, and eight wells were drilled. In 1937, 1938 and 1939, the operation was successful, but in the *271 taxable year 1941 the oil production was insufficient to pay the cost of operation, and the several owners agreed to sell the operating equipment. Bell and Mrks, Incorporated, sold the equipment, and petitioner Hewett received from this sale the sum of $4,995 for his one-eighth interest therein. On his income tax return for the taxable year 1941, petitioner Hewett reported a cost basis for the Lincoln Life oil interest of $6,500, a sales price of $1,248, and claimed a deduction of $5,252, as an ordinary loss. He reported a cost basis for the Schember oil interest of $19,356.71, a sales price of $4,995, and claimed a deduction of the amount of $14,361.71, as an ordinary loss. In his deficiency notice, the respondent determined that the losses from the sale of the two oil interests were long-term capital losses, and allowed only 50 per cent of the claimed deductions. Opinion In Docket No. 15158, the respondent determined that all the net income of the businesses conducted under the names of the Hewett Grocery Company and the Soo Realty Company in the taxable year 1941 was taxable to petitioner Clyde G. Hewett under section 22(a) of the Internal Revenue Code *272 . In Docket No. 7889, respondent has proposed a deficiency for the year 1941 against the Hewett Grocery Company on the theory it was an "association" taxable as a corporation under section 3797 (a) (3) of the Internal Revenue Code. In determining such deficiency, respondent added to the net income of the Hewett Grocery Company the net income of the business operated under the name of the Soo Realty Company. The two positions taken by the respondent are to a certain degree incompatible. The basic question is whether, in the taxable year, the businesses conducted under the names of the Hewett Grocery Company and the Soo Realty Company were valid partnerships for income tax purposes. If the answer to this question is in the negative, then we must determine whether all the net income is taxable to petitioner Hewett, as a sole proprietor, under section 22 (a), or whether petitioner Hewett Grocery Company is an association taxable as a corporation. In 1912, petitioner Hewett became engaged in the wholesale hay, grain and feed business in Escanaba, Michigan. Hewett originally invested $7,000 of his own funds, borrowed $7,000 from banks, and his wife, Isabel, invested *273 $2,500 of her own funds acquired prior to her marriage. The business was gradually changed to a wholesale grocery business and, by 1920, five branches had been established in five cities in the Upper Peninsula of Michigan. In April 1925, all five branches were separately incorporated. Approximately one third of the stock of each corporation was issued to Hewett's wife, Isabel, as representing her original investment made in 1912. In 1933, Hewett was advised that the charter of the Hewett Grocery Company of Sault Ste. Marie had expired and it was decided to operate that business as a copartnership consisting of Hewett, his wife, and their four children, namely, Margaret, Grant, Catherine and Dorothy. No formal partnership agreement was entered into at that time, but the six individuals executed and filed a "Certificate of Doing Business as a Copartnership" at Sault Ste., Marie. All of the children were employed by this corporation prior to the formation of the partnership. Catherine and Grant had been employed since 1928, Mary since 1930, and Dorothy, the youngest daughter, had been employed during school vacations, but after the partnership was formed she devoted her full time to *274 the business. In 1928 Catherine had purchased 30 shares of the stock of the Hewett Grocery Company of Sault Ste. Marie. In 1928 Grant Hewett purchased 80 shares of the stock of the Hewett Grocery Company of Ishpeming. The balance of the shares, except one, were held by Hewett and his wife. On December 31, 1934, the Ishpeming Corporation was dissolved and its assets and property were transferred to the partnership consisting of Hewett, his wife and four children. On January 1, 1936, the Escanaba corporation was dissolved and its property and assets were transferred to a separate partnership consisting of Hewett, his wife and four children. On April 1, 1937, effective as of January 1, 1937, Hewett and his four children entered into a formal written agreement of copartnership under which the three separate partnerships of Sault Ste. Marie, Ishpeming and Escanaba were consolidated. Under this agreement the partners were to share equally in the profits and the losses. Mrs. Hewett was not made a member of this partnership. By separate agreement between the partners and Mrs. Hewett, the latter sold her one-sixth interest in the three prior partnerships to the partners in consideration of *275 their agreement to pay to her one sixth of the net profits of such partnership. On July 5, 1931, Hewett and his wife had their shares of stock in the Hewett Grocery Company of Iron River reissued so that they and their children each held 48 1/3 shares. On March 27, 1935, Hewett and his wife had their shares of stock in the Hewett Grocery Company of Manistique reissued so that they and their children each held 50 shares. These two corporations continued to function as corporations until January 1, 1938, when they were dissolved and their property and assets were transferred to the partnership formed as of January 1, 1937, consisting of Hewett and his four children. At the same time such partners entered into another agreement with Mrs. Hewett, under which she purported to sell her interest in the assets of the Iron River and Manistique corporations to the partners in consideration of their agreement to pay her one sixth of the annual net profits of the partnership. The reason for these separate agreements was to permit Mrs. Hewett to share in the partnership profits despite the fact that under the Michigan law then effective a wife could not be a member of a partnership in which her *276 husband was a partner. From January 1, 1938 to January 12, 1942, Hewett and his four children conducted the wholesale grocery business, operating the five branches in the Upper Peninsula of Michigan under a formal declaration of their intent to carry on a joint business for their common benefit, wherein each was to share equally in the profits and losses. It was clearly intended that this should be a bona fide actual partnership and was so operated. Each of the partners had contributed both capital and services and, therefore, the test prescribed by the Supreme Court for determining the existence of a valid partnership for income tax purposes has been met. Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293. The fact that each partner's share in the profits was not in proportion to his or her contribution to the partnership is not controlling. His liability for losses was not limited. Woosley v. Commissioner, 168 Fed. (2d) 330. The series of transactions taking place since 1928 indicates rather positively that it was the desire of Hewett and his wife to have their children interested in the business and that the latter *277 were anxious to become associated therewith. The respondent argues that the partnership agreement granting to Hewett specific powers of supervision which were denied to the other partners, except on his written authority, is another factor indicating the lack of an intention to carry on a bona fide partnership. The record establishes that Hewett did not in fact exercise such powers and, after 1937, devoted little time to the partnership affairs. The other partners did exercise such powers. All the partners participated in meetings, where matters pertaining to the operation and administration of the partnership were discussed and the policy to be followed was determined. Upon giving proper emphasis to all the surrounding facts and circumstances presented by this record, we conclude that the wholesale grocery business conducted by Hewett and his four children in the taxable year 1941 constituted a valid partnership for income tax purposes. Therefore, the income therefrom is taxable to the respective partners, and the respondent erred in taxing all the income to petitioner Hewett as sole proprietor. The partnership conducted under the name of the Hewett Grocery Company filed a partnership *278 return for the taxable year 1941, allocating the net profits of the business for that year among the six members of the Hewett family. Since Mrs. Hewett was not a member of the partnership in the year 1941, the net profits should be allocated among the five partners, i.e., Hewett and his four children. One fifth of the net profits of the Hewett Grocery Company for the year 1941 is properly includable in petitioner Hewett's gross income for the taxable year 1941, and such adjustment will be made in its computation under Rule 50. In determining the deficiency in Docket No. 15158 and Docket No. 7889, the respondent added the net income of the business operated under the name of the Soo Realty Company in the amount of $2,075.58, to the Hewett Grocery Company of Sault Ste. Marie, upon the theory that it was either the individual business of Hewett or was a part of the Hewett Grocery Company, an "association" taxable as a corporation. These petitioners contend that the Soo Realty Company was a copartnership separate and distinct from the copartnership conducting the wholesale grocery business. The Soo Realty Company purchased two buildings, one of which it rented to the A & P Tea Company *279 and the other it rented to the Hewett Grocery Company of Sault Ste. Marie. It had no other business. Its capital was acquired through loans at the bank and some moneys were loaned by Hewett, his wife and their daughter Catherine. On January 12, 1932, subsequent to the taxable year involved, a certificate of conducting business under the assumed name of the Soo Realty Company was executed and filed by Hewett, his wife and four children. No prior date was mentioned. On the same date a written partnership agreement was executed by the aforementioned persons. The preamble to this agreement states: "WHEREAS, on this date the abovenamed parties have formed a partnership as of April 15, 1941 for the conduct of a realty business in the Upper Peninsula of the State of Michigan." Whatever this preamble means, this record is otherwise silent as to whether the parties had orally agreed to conduct, or actually conducted, a realty business as copartners prior to January 12, 1942. We therefore conclude that the evidence respecting the Soo Realty Company is so meager we are unable to find that the realty business was really conducted as a bona fide partnership in the taxable year 1941. For lack *280 of sufficient proof, we sustain the respondent's determination that the net income of the Soo Realty Company, in the amount of $2,075.58, is taxable to petitioner Hewett, in Docket No. 15158, under section 22 (a) of the Internal Revenue Code. In Docket No. 15158, a further issue is presented as to whether certain losses sustained in 1941 by petitioner Hewett in connection with his investment in a working interest in two oil leases were ordinary losses or capital losses. In 1937, Hewett acquired a one-sixteenth working interest in an oil lease known as the "Lincoln Life Lease", and a one-eighth interest in an oil lease known as the "Schember Lease", both located near Gladwin, Michigan. The operations were at first successful, but in 1941 the oil production was insufficient to pay the cost of operation and the interested parties decided to abandon further operations. Thereupon, the tanks, pipe and other equipment used in such operations were sold. In 1941, petitioner Hewett received his pro rata share of the salvage proceeds. In his tax return for 1941, Hewett claimed a loss deduction of the difference between his stated cost and his share of the salvage proceeds *281 as an ordinary loss. The respondent determined that the transaction constituted a sale of long-term capital assets and allowed a deduction of 50 per cent of the amount claimed. Petitioner Hewett did not offer in evidence any contracts or documents evidencing the nature of his interest. He testified that his interest consisted of a right to a proportionate share of the profits and a liability for his share of the expenses of the operations. Since there is nothing in this record contradicting Hewett's testimony as to the character of his interest, we accept it as the fact and conclude therefrom that the losses sustained in the taxable year were ordinary losses deductible in full under section 23 (e) of the Internal Revenue Code. The respondent stresses the fact that the operations were not conducted by Hewett, but were carried on by Bell and Marks, Incorporated, one of the parties interested in the joint adventure. We do not think such circumstances changed the character of Hewett's losses. Bell and Marks, Incorporated, was obviously the agent of Hewett in conducting the operations under the leases and in making the salvage sale of the equipment. At the hearing *282 of this proceeding, Hewett testified to a cost basis for his interest in the respective leases greatly in excess of the cost basis he had claimed on his tax return. In his petition he made no claim for an increased cost basis, nor was any motion made at the hearing to conform the pleadings to the proof. We, therefore, conclude that the amount of the losses resulting from Hewett's connection with the operating interest in the oil leases involved is to be limited to the amounts claimed on his tax return. There remains for disposition the issue raised in Docket No. 7889, wherein the respondent determined a deficiency against the Hewett Grocery Company on the theory it was an "association" taxable as a corporation, under section 3797 (a) (3) of the Internal Revenue Code, in the taxable year 1941. Since we have held in Docket No. 15158 that the Hewett Grocery Company, in the year 1941, was a valid partnership for income tax purposes and its net income taxable to the partners, we are precluded from determining that it was also an "association" taxable as a corporation in the same year. Treasury Regulations 103, section 19.3797-2, defining "association", specifically *283 excludes a partnership. The deficiency in Docket No. 7889 is, therefore, without basis to support it. In Docket No. 7889, decision will be entered of "No deficiency". In Docket No. 15158, decision will be entered under Rule 50.